NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JAMES KORYOR, *Appellant.*

No. 1 CA-CR 18-0234
FILED 4-30-2019

Appeal from the Superior Court in Maricopa County
No. CR2015-118047-001
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jeffrey L. Force
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

**J O N E S**, Judge:

**¶1**         James Koryor argues the combination of a prison sentence for one count of negligent homicide and a suspended sentence for one count of child abuse constitutes consecutive punishment for a single act in violation of Arizona Revised Statutes (A.R.S.) § 13-116.[1]   Because Koryor's convictions arose out of separate acts, A.R.S. § 13-116 is inapplicable, and we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**         On April 20, 2015, Koryor's two-and-a-half-year-old son, A.K., died from heat exposure after Koryor left him unattended in a car.[2] At trial, for one count each of manslaughter and child abuse the State presented evidence that Koryor, his wife, A.K., and another son got into the family vehicle, intending to procure haircuts for the children.  Koryor, who was intoxicated, had the car keys and sat in the driver's seat.  However, before leaving the driveway, Koryor and his wife began arguing about his alcohol consumption, and Koryor's wife left the car and went back inside. An hour later, Koryor returned to the house and fell asleep.  His wife found A.K. unresponsive an hour later, and attempts to resuscitate him were unsuccessful.

**¶3**         The jury found Koryor guilty of negligent homicide, a class 4 felony and a lesser-included offense of manslaughter, and child abuse, a class 3 felony.  The jury also found the State proved three aggravating circumstances for each count.

---

[1]      Absent material changes from the relevant date, we cite the current versions of rules and statutes.

[2]      "We view the facts in the light most favorable to sustaining the convictions with all reasonable inferences resolved against the defendant." *State v. Harm*, 236 Ariz. 402, 404, ¶ 2 n.2 (App. 2015) (quoting *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

¶4        At sentencing, Koryor opposed the State's recommendation that he be sentenced to a term of imprisonment for the negligent homicide conviction, followed by a term of supervised probation for the child abuse conviction. Koryor argued the sentences would violate A.R.S. § 13-116's prohibition against consecutive sentences for convictions arising from a single act. The State argued that, based upon the evidence presented at trial, the jury could have found the negligent homicide and child abuse "arose from a set of actions and omissions." Although the State did not elaborate what acts or omissions it was referring to, and the trial court did not seek further elucidation of the issue, the court found that "the jury could find two different crimes based on the whole course of events."

¶5        The trial court then sentenced Koryor to a slightly aggravated term of three years' imprisonment for negligent homicide, with credit for 158 days of presentence incarceration. The court suspended the imposition of sentence for child abuse and placed Koryor on eight years' supervised probation, to commence upon his release from prison. Koryor timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(4).

## DISCUSSION

¶6        Koryor argues the imposition of probation following his prison term is a consecutive sentence in violation of A.R.S. § 13-116, which provides: "An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent." We review *de novo* whether a sentence violates A.R.S. § 13-116. *See State v. Siddle*, 202 Ariz. 512, 517, ¶ 16 (App. 2002) (citing *State v. Belyeu*, 164 Ariz. 586, 591 (App. 1990)).

¶7        Koryor argues the act of leaving A.K. in the vehicle was a single event used to prove both negligent homicide and child abuse. Koryor supports this argument with the following statement made by the State in its closing:

> And here are the facts. The charges arise from the incident of the defendant taking the children to get haircuts and leaving [A.K.] behind. It's not anything else. There is no other allegation. So the facts surrounding both charge[s] are very similar. So you see why the evidence that shows why he is guilty of manslaughter also is the same evidence which shows why the defendant is guilty of child abuse.

In response, the State side-steps the single-act issue, arguing instead that A.R.S. § 13-116 is inapplicable to suspended sentences. However, we need not address whether the imposition of a term of probation is a "sentence" for purposes of A.R.S. § 13-116 in this case because, pursuant to our *de novo* review, we reject Koryor's contention that his criminal conduct constituted a single act.

¶8        To determine whether a defendant's criminal conduct constitutes a single act for purposes of A.R.S. § 13-116, this Court applies the modified identical elements test described in *State v. Gordon*, which "focuses on the facts of the transaction." 161 Ariz. 308, 313 n.5 & 315 (1989); *accord State v. Bush*, 244 Ariz. 575, 595, ¶ 90 (2018). Applying *Gordon*'s three-part test, we first "subtract[] from the factual transaction the evidence necessary to convict on the ultimate charge" — here, child abuse[3] — and then determine whether "the remaining evidence satisfies the elements of the other crime." 161 Ariz. at 315. We then determine "whether . . . it was factually impossible to commit the ultimate crime without also committing the secondary crime." *Id.* Finally, we "consider whether the defendant's conduct in committing the [secondary] crime caused the victim to suffer an additional risk of harm beyond that inherent in the ultimate crime." *Id.*

¶9        A person is guilty of child abuse if, "having the care or custody of a child," the person "causes or permits a child . . . to be placed in a situation where the person or health of the child . . . is endangered." A.R.S. § 13-3623(A). The offense is a class 3 felony if done recklessly. A.R.S. § 13-3623(A)(2). The record here contains evidence sufficient to support a conviction for reckless child abuse based upon Koryor physically controlling a motor vehicle while intoxicated and with A.K. in the back seat. *See State v. Nereim*, 234 Ariz. 105, 110, ¶ 18 (App. 2014) (finding sufficient evidence to support the defendant's child abuse conviction where the defendant drove while under the influence of alcohol with children in the car).

---

3        While at first blush, negligent homicide would appear to be the ultimate charge, reckless child abuse is classified as the more serious offense. *Compare* A.R.S. § 13-3623(A)(2) (defining reckless child abuse as a class 3 felony), *with* A.R.S. § 13-1102(C) (defining negligent homicide as a class 4 felony); *see also State v. Roseberry*, 210 Ariz. 360, 370-371, ¶ 59 (2005) (using the class of felony to determine which charge is the ultimate offense). Reckless child abuse also requires a more culpable mental state than negligent homicide. *See* A.R.S. § 13-202(C) (establishing culpable mental state hierarchy of intentionally, knowingly, recklessly, and negligently).

¶10 At trial, Koryor's mother and daughter both testified Koryor had said he was taking his sons to get haircuts. Koryor's wife testified that Koryor, while intoxicated, planned to take his two sons to get haircuts. Koryor, his wife, and the two sons got into the car, with Koryor in the driver's seat and in possession of the keys. While the car was still in the driveway, an argument ensued regarding Koryor's drinking and his wife left the car and went back inside the house. She did not see Koryor drive away. An hour later, Koryor came back into the house and fell asleep.

¶11 Additionally, a forensic scientist testified that Koryor's blood alcohol concentration was somewhere between 0.179 and 0.325 at 1:30 p.m., the approximate time A.K. was left in the vehicle. Additionally, it is generally accepted that individuals with a blood alcohol concentration of 0.08 or more are impaired for purposes of driving a motor vehicle. *See also* A.R.S. § 28-1381(G)(3) (creating a presumption that a person with a blood alcohol concentration of 0.08 or more is under the influence of intoxicating liquor).

¶12 Although no one saw Koryor leave the driveway with the children in the car, and Koryor denied doing so, the evidence is sufficient for the jury to have determined beyond a reasonable doubt that Koryor was intoxicated, had custody or control of A.K., and was in physical control of the car while A.K. was in the back seat. *See State v. Zaragoza*, 221 Ariz. 49, 51, 54, ¶¶ 7, 21 (2009) (clarifying that Arizona criminalizes the actual physical control of a motor vehicle while under the influence of alcohol, which includes the "exercise of present or *imminent* control over the vehicle while impaired") (emphasis added). Although the State did not charge Koryor with driving under the influence, these facts are sufficient to show Koryor placed A.K. in a situation where his person or health was endangered, which constitutes child abuse.

¶13 "A person commits negligent homicide if with criminal negligence the person causes the death of another person." A.R.S. § 13-1102(A). For purposes of negligent homicide, "criminal negligence," means "a person fails to perceive a substantial and unjustifiable risk that the [death] will occur." A.R.S. § 13-105(10)(d). Having subtracted the evidence necessary to convict Koryor of the child abuse count from the factual transaction, we find sufficient remaining evidence to satisfy the elements of negligent homicide. Specifically, the remaining evidence establishes that Koryor left A.K. in a vehicle and exposed to the heat, which resulted in his death. This second act caused A.K. to suffer additional harm — death — beyond the mere risk of danger inherent in the child abuse. *See Bush*, 244 Ariz. at 595, ¶ 90; *State v. Mahaney*, 193 Ariz. 566, 569, ¶ 18 (App. 1999)

(defining "endanger" in child abuse statute to mean "subject to potential harm"). Accordingly, the two convictions arose out of separate acts and A.R.S. § 13-116 does not bar consecutive sentences.

**¶14** Although the prosecutor, in closing arguments, chose to emphasize Koryor's act of leaving A.K. in the car to support conviction on both negligent homicide and child abuse, the *Gordon* analysis does not turn upon how the prosecutor emphasized the evidence presented at trial. Rather, the question is whether the State produced sufficient evidence showing two separate acts occurred. The jury was free to reject the State's emphasis and use any evidence presented to support the conviction. Indeed, the jury was instructed that counsel's comments during opening and closing arguments were not evidence, and we presume it followed those instructions. *State v. Hidalgo*, 241 Ariz. 543, 554, ¶ 43 (2017) (citing *State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006), and *State v. Anderson*, 210 Ariz. 327, 342, ¶ 50 (2005)). Nor are we concerned that the indictment did not identify the specific method by which the State intended to prove Koryor committed child abuse. *See State v. Arnett*, 158 Ariz. 15, 18 (1988) ("There is no requirement that the defendant receive notice of how the State will prove his responsibility for the alleged offense.") (citing *State v. Tison*, 129 Ariz. 526, 538 (1981)). In any event, at trial, Koryor vigorously disputed his level of intoxication and whether he was the last person to be in control of the vehicle, and thus had an adequate opportunity to defend against the charges.

## CONCLUSION

**¶15** We affirm.

